FILED

1

2       **K&L GATES LLP**
        10100 Santa Monica Boulevard
3            Seventh Floor
        Los Angeles, California 90067
4          Telephone: 310.552.5000          2011 OCT 20   AM 10: 59
           Facsimile: 310.552.5001
                                           CLERK U.S. DISTRICT COURT
5                                          CENTRAL DIST. OF CALIF.
   Robert E. Feyder (SBN 130688)               LOS ANGELES
6    robert.feyder@klgates.com             BY_____
   Kevin S. Asfour (SBN 228993)
7    kevin.asfour@klgates.com

8  Attorneys for Defendants CitiMortgage,
   Inc.; Verdugo Trustee Services
9  Corporation; and CR Title Services, Inc.

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12  BELINDA DE GUZMAN and            Case No. **CV 11 - 8685**
    FAUSTINO DE GUZMAN, and others
13  similarly situated,              **NOTICE OF REMOVAL BASED ON
                                     FEDERAL QUESTION
14                  Plaintiffs,      JURISDICTION (28 U.S.C. §§ 1331,
                                     1367, 1441, 1446); CONSENT TO
15           vs.                     REMOVAL BY DEFENDANT
                                     SAXON MORTGAGE SERVICES,
16  CitiMortgage, Inc., as the Originator;  INC.; CONSENT TO REMOVAL BY
    Morgan Stanley Mortgage Capital          DEFENDANT PROGRESSIVE
17  Holdings LLC as the Securitization        TITLE**
    Sponsor; Morgan Stanley Capital I Inc., as
18  the Securitization Depositor; Morgan
    Stanley Mortgage Loan Trust, as the
19  Securitization Issuing Entity; LaSalle
    Bank National Association, as the
20  Securitization Trustee and Custodian;
    Saxon Mortgage Services, Inc., as the
21  Securitization Master Servicer; Saxon
    Mortgage Services, Inc., as the Mortgage
22  Servicer; Verdugo Trustee Services
    Corporation, as the Mortgage Trustee;
23  Progressive Title, as the Title Company;
    CR Title Services, Inc., as the Foreclosing
24  Trustee; Mortgage Electronic Registration
    Systems, Inc. and all persons unknown
25  claiming any legal or equitable right, title
    estate, lien or interest in the property
26  described in the complaint adverse to
    plaintiff's title or any cloud on Plaintiff's
27  title thereto and Does 1 through 20,
    inclusive,
28                  Defendants.

                                                              RECYCLED PAPER

                        NOTICE OF REMOVAL

# NOTICE OF REMOVAL

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Please take notice** that pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, Defendants CitiMortgage, Inc., Verdugo Trustee Services Corporation; and CR Title Services, Inc. (collectively, "Removing Defendants") hereby remove the Civil Action (as defined below) from the Superior Court of California in and for the County of Los Angeles to the United States District Court for the Central District of California, and in support thereof state as follows:[1]

## I.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION DUE TO THE PLAINTIFFS' FEDERAL CLAIMS

1.     On September 9, 2011, a civil action was commenced by plaintiffs Belinda De Guzman and Faustino De Guzman ("Plaintiffs") in the Superior Court of California in and for the County of Los Angeles (the "Superior Court"), styled *De Guzman, et al. v. CitiMortgage, Inc., et al.*, Case No. PC 051508 (the "Civil Action"). A true and correct copy of the Complaint filed therein is attached hereto as Exhibit 1.

2.     Under 28 U.S.C. § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Moreover, 28 U.S.C. § 1441(a) provides, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be

---

[1] It is unnecessary to include evidence with a notice of removal; rather, a defendant need only *allege* "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).  "[T]his language in 28 U.S.C.S. § 1446(a) is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199-200 (4th Cir. 2008) (citing H.R. Rep. No. 100-889, at 71-72 (1988), as reprinted in 1988 U.S.C.C.A.N. 5982, 6032); *see also* 16 Moore's Fed. Prac. (3d ed. 2011) § 107.30 [2][a][i].

RECYCLED PAPER

NOTICE OF REMOVAL

1   removed by the defendant or the defendants, to the district court of the United States

2   for the district and division embracing the place where such action is pending."

3        3.    The Complaint filed in the Civil Action alleges various claims pertaining

4   to an alleged mortgage loan secured by real property located at 11547 Vimy Road,

5   Granada Hills, California, 91344 (the "Property") and an alleged foreclosure thereon.

6   In particular, Plaintiffs allege three counts of violating the federal Racketeer

7   Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. §§ 1961 et seq.). *See*

8   Complaint, ¶¶ 36-54. Plaintiffs also allege violations of the federal Truth in Lending

9   Act ("TILA," 15 U.S.C. §§ 1601 et seq.) and the federal Real Estate Settlement

10  Procedures Act ("RESPA," 12 U.S.C. §§ 2601 et seq.). *See* Complaint, ¶ 62. As such,

11  the Civil Action arises under the laws of the United States, and is removable to this

12  Court on that basis. *See* 28 U.S.C. §§ 1331, 1441.

13       4.    In addition to the federal claims outlined above, the Complaint also

14  alleges various state common law and statutory claims. All of these state-law claims

15  are so related to Plaintiffs' federal claims that they form part of the same case and

16  controversy for the purposes of Article III of the U.S. Constitution. Accordingly, the

17  Court has supplemental jurisdiction over such claims. 28 U.S.C. § 1367. Even if,

18  *arguendo*, the state-law claims were *not* so related to Plaintiffs' federal claims, the

19  Court would nonetheless have jurisdiction over the state-law claims pursuant to 28

20  U.S.C. § 1441(c).

21

## II.   VENUE IS PROPER IN THIS COURT

23       5.    The Central District of California, Western Division embraces the County

24  of Los Angeles, where the Civil Action was pending prior to the filing of this Notice of

25  Removal. Accordingly, venue is proper in the U.S. District Court for the Central

26  District of California, Western Division. 28 U.S.C. § 1441(a); C.D. Cal. General

27  Order 349.

28

RECYCLED PAPER

NOTICE OF REMOVAL

III.   **THIS NOTICE OF REMOVAL IS TIMELY**

6.     Plaintiffs have thus far failed to effectuate valid service of process upon any of the Removing Defendants.  Accordingly, this Notice of Removal is timely.  *See* 28 U.S.C. § 1446(b); *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-48 (1999); *Quality Loan Serv. Corp. v. 24702 Pallas Way*, 635 F.3d 1128, 1132-33 (9th Cir. 2011).

IV.   **ALL OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED**

7.     Defendants Saxon Mortgage Services, Inc. and Progressive Title have consented to this removal, as reflected in the Consents to Removal attached hereto. Upon information and belief, the Removing Defendants allege that Plaintiffs have thus far failed to effectuate valid service of process upon any of the other defendants named in the Civil Action, and thus such defendants need not join in or consent to this notice of removal.

8.     Promptly after filing this Notice of Removal, the Removing Defendants shall serve written notice thereof to all adverse parties and shall file a copy of this Notice of Removal with the Superior Court, pursuant to 28 U.S.C. § 1446(d).

9.     Plaintiff's Complaint is attached hereto as Exhibit 1.  The Removing Defendants have not received or been served with any other papers filed in the Civil Action.

///
///
///
///
///
///
///
///

3

NOTICE OF REMOVAL

RECYCLED PAPER

1    WHEREFORE, having complied with all pertinent requirements, the Removing

2  Defendants hereby remove the Civil Action to this Court and respectfully invoke the

3  Court's jurisdiction thereby.

4

5                                        K&L GATES LLP

6

7  Dated:  October 19, 2011          By:  _____

8                                        Robert E. Feyder
                                         Kevin S. Asfour
9                                        Attorneys for Defendants
                                         CitiMortgage, Inc.; Verdugo Trustee
10                                       Services Corporation; and CR Title
                                         Services, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

NOTICE OF REMOVAL

RECYCLED PAPER

1

## CONSENT TO REMOVAL

2
    Defendant Saxon Mortgage Services, Inc. hereby consents to the removal of the

3
action styled *De Guzman, et al. v. CitiMortgage, Inc., et al.*, Case No. PC 051508 from

4
the Los Angeles Superior Court to the U.S. District Court for the Central District of

5
California.

6

7
                                 SAXON MORTGAGE SERVICES,

8
                                   INC.

9

10
Dated:  October 14, 2011           By:

11
                                   LeAllen Frost
                                   Vice President and Assistant General
                                   Counsel

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF REMOVAL**

RECYCLED PAPER

1

## CONSENT TO REMOVAL

2      Defendant Progressive Title hereby consents to the removal of the action styled

3  *De Guzman, et al. v. CitiMortgage, Inc., et al.*, Case No. PC 051508 from the Los

4  Angeles Superior Court to the U.S. District Court for the Central District of California.

5

6                                          GALFIN, PASSON & GREELY, LLP

7

8  Dated:  October 18, 2011          By: _____

9                                          Kenneth Passon
                                           Attorneys for Defendant Progressive
                                           Title

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECYCLED PAPER

# Exhibit 1

91544 A6033

FILED
LOS ANGELES SUPERIOR COURT

SEP 0 9 2011

JOHN A. CLARKE, CLERK

BY STEVEN OROZCO, DEPUTY

1  | BELINDA DE GUZMAN , In Pro Se
2  | FAUSTINO DE GUZMAN,  In Pro Se
   | 11547 VIMY ROAD,
3  | GRANADA HILLS, CA 91344
   | Tel: (818) 269-8719
4  | Attorney for Plaintiffs

5  SUPERIOR COURT OF THE STATE OF CALIFORNIA

6  FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| 7 | Case No.    PC051508 |
| 8  BELINDA DE GUZMAN and FAUSTINO | |
| 9  DE GUZMAN, and others similarly situated, | COMPLAINT FOR: |
| 10             Plaintiff, | 1.  CIVIL RICO |

COMPLAINT FOR:

1. CIVIL RICO
2. NEGLIGENCE
3. FRAUDULENT CONVEYANCE
4. REAL ESTATE FRAUD
5. CANCELLATION OF A VOIDABLE CONTRACT UNDER REV & TAX CODE §§ 23304.1, 23305A AND VIOLATION OF CAL. CORP. CODE §§ 191(C)(7);
6. TO SET ASIDE TRUSTEE'S SALE;
7. TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE;
8. TO VOID OR CANCEL ASSIGNMENT OF DEED OF TRUST;
9. WRONGFUL FORECLOSURE;
10. BREACH OF CONTRACT;
11. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;
12. UNJUST ENRICHMENT;
13. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.;
14. QUIET TITLE; AND
15. SLANDER OF TITLE

Plaintiff's complaint defendants:

vs.

CitiMortgage, Inc., as the Originator; Morgan Stanley Mortgage Capital Holdings LLC as the Securitization Sponsor; Morgan Stanley Capital I Inc., as the Securitization Depositor; Morgan Stanley Mortgage Loan Trust, as the Securitization Issuing Entity; LaSalle Bank National Association, as the Securitization Trustee and Custodian; Saxon Mortgage Services, Inc., as the Securitization Master Servicer;  Saxon Mortgage Services, Inc., as the Mortgage Servicer; Verdugo Trustee Services Corporation, as the Mortgage Trustee; Progressive Title, as the Title Company; CR Title Services, Inc., as the Foreclosing Trustee; Mortgage Electronic Registration Systems, Inc.and all persons unknown claiming any legal or equitable right, title estate, lien or interest in the property described in the complaint adverse to plaintiff's title or any cloud on Plaintiff's title thereto and Does 1 through 20 inclusive,

Defendants.

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiffs hereby allege as follows:

## PARTIES

3.     Defendant SAXON MORTGAGE SERVICES, INC. is, and at all times herein mentioned was, a Delaware limited liability company, organized and existed under the laws of the State of California, doing business in Los Angeles County, California.

4.     Defendant LASALLE BANK NATIONAL ASSOCIATION as Indenture Trustee, on Behalf of the Holders of the MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL Without Recourse (" Trust") is, and at all times herein mentioned was, a business entity of unknown form, doing business in Los Angeles County, California.

5.     Defendant CR TITLE SERVICES, INC. ("TC") is a ARIZONA corporation with its principal place of business in Pima County, Arizona.

6.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), is a Delaware corporation with its principal place of business in the State of Virginia.

7.     "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto" are sued herein pursuant to California Code of Civil Procedure Section 762.020(a).

8.     Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly,

1   negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner

2   for the acts and omissions described herein.  Plaintiffs will amend this Complaint to set forth the

3   true names and capacities of each DOE Defendant when same are ascertained.

4         10.    Plaintiffs are informed and believe and based on such information and belief aver

5   that Defendants LASALLE BANK NATIONAL ASSOCIATION, SAXON MORTGAGE

6   SERVICES, INC. and DOE Defendants 1 through 20, inclusive, and each of them, are and at all

7   material times have been, the agents, servants or employees of each other, purporting to act

8   within the scope of said agency, service or employment in performing the acts and omitting to

9   act as averred herein.  LASALLE BANK NATIONAL ASSOCIATION, SAXON MORTGAGE

10  SERVICES, INC., CR TITLE SERVICES, INC,TC, MERS and DOE Defendants 6 through 10,

11  inclusive, are hereinafter collectively referred to as the "Foreclosing Defendants."

12  

13        11.    Each of the Defendants named herein are believed to, and are alleged to have

14  been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of,

15  each of the other Defendants, and are therefore alleged to be jointly and severally liable for the

16  claims set forth herein, except as otherwise alleged.

17  

18  

19                     **FACTUAL ALLEGATIONS**

20        12.    Plaintiffs executed a series of documents, including but not limited to a Note

21  and Deed of Trust, securing the Property in the amount of note.  The original beneficiary and

22  nominee under the Deed of Trust was MERS.

23        13.    Plaintiffs are informed and believe, and thereon allege, that this loan was

24  securitized, with the Note not being properly transferred to Defendant, FV-1, Inc. in trust for

25  Morgan Stanley Mortgage Capital holdings LLC, acting as the Trustee for the Securitized

26  Trust.  As set forth herein above, the Securitized Trust was formed by execution of the PSA.

27  

28  

PLAINTIFFS' COMPLAINT

14.   Plaintiffs are informed and believe, and thereon allege, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiffs in favor of the original lender and other Defendants, regarding the Property, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA of the entities making and receiving the purported assignments to this trust.

15.   Plaintiffs allege that the PSA requires that each Note or Deed of trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by the closing date. Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void.

16.   Plaintiffs further allege that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party. Documents filed with the SEC by the securitization participants allegedly claim that the Note and Deed of Trust at issue in this case were sold, transferred and securitized claim that the Note and Deed of Trust at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages with an aggregate principal balance of approximately $269,086,000, into the MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL, which is a Common Law Trust formed pursuant to New York law. A copy of the Prospectus Supplement can be found at the site indicated below.

Plaintiffs are informed and believe, and thereon allege, that the MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL had no officers or directors and no continuing duties

1    other than to hold assets and to issue the series of certificated of investment as described in the

2    Prospectus identified herein below.  A detailed description of the mortgage loans which form the

3    Trust MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL is included in Form

4    424B5 (the "Prospectus"), which has been duly filed with the SEC and which can be accessed

5    through this Link:

6    http://www.sec.gov/Archives/edgar/data/762153/000114420407034346/v079559_424b5.htm

7

8        17.   Plaintiffs also allege that the Note was secured by the Deed of Trust.  Plaintiffs

9    allege that as of the date of the filing of this Complaint, the Deed of Trust had not been legally

10    assigned to any other party or entity.

11        18.   Plaintiffs are informed and believe, that Defendant FV-1, Inc. in trust for

12    Morgan Stanley Mortgage Capital holdings LLC, alleges that it is the "holder and owner" of

13    the Note and the beneficiary of the Deed of Trust.  However, the Note and Deed of Trust

14    identify the mortgagee and note holder as the original lending institution or Mortgage

15

16    Originator. · Documents stat that the original lender allegedly sold the mortgage loan to

17    MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL.

18        19.   Plaintiffs further allege that no documents or records can be produced that

19    demonstrate that prior to the closing date for MORGAN STANLEY MORTGAGE LOAN

20    TRUST 2007-9SL, the Note was duly endorsed, transferred and delivered to MORGAN

21

22    STANLEY MORTGAGE LOAN TRUST 2007-9SL, including all intervening transfers.  Nor

23    can any documents or records be produced that demonstrate that prior to the closing date, the

24    Deed of Trust was duly assigned, transferred and delivered to MORGAN STANLEY

25    MORTGAGE LOAN TRUST 2007-9SL, including all intervening assignments.

26        20.   Plaintiffs further allege that any documents that purport to transfer any interest

27

28

in the Note to MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

21.   The link to the SEC and the various documents filed with the SEC regarding the Note are: SEC Website: http://www.sec.gov.

22.   Plaintiffs are further informed and believe, and thereon allege, that the purported assignments and transfers of Plaintiffs' debt or obligation did not comply with New York law, and/or other laws and statutes, and thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected. The alleged holder of the Note is not the beneficiary of the Deed of Trust. The alleged beneficiary of Plaintiffs' Deed of Trust does not have the requisite title, perfected security interest or standing to proceed; and/or is not the real party in interest with regard to any action taken or to be taken against the Property.

23.   Plaintiffs are also informed and believe, and thereon allege, that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

24.   As set forth hereinabove, Defendants, and each of them, violated the express terms of the PSA which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase Agreement, is the operative securitization document created by the finance and securitization industry to memorialize a particular securitization transaction. The PSA specifies the rights and obligations of each party to the securitization transaction to each other, and is a public document on file with the SEC. More specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to achieve their specific objectives.

25.   Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms.  The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe.  The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy.  In order to achieve the desired "bankruptcy remoteness" two "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

26.   A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party.  An offer would be made, accepted and compensation given to the "seller" in return for the Note.  The Notes would be transferred, and the deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be endorsed to the next party by the previous assignee of record.

27.   In order for the Trustee of the Securitized Trust to have a valid and enforceable secured claim against Plaintiffs' Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

        a.   There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust, and that all of these endorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

        b.   The Trustee of the Securitized Trust had actual physical possession of the Note

at that point in time, when all endorsements and assignments had been completed.   Absent such proof, Plaintiffs allege that the Trust cannot demonstrate that it had perfected its security interest in Plaintiffs' Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

28.   Plaintiffs are informed and believe, and thereon allege, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the originator lender herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiffs' herein and all other mortgage loans identified in the PSA.

29.   Plaintiffs are further informed and believe, and thereon allege, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificated described in the PSA, and were intended by the parties to be a bona fide or "True Sale".   Since, as alleged herein below, True Sales did not actually occur.   Plaintiffs allege that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

30.   Plaintiffs are further informed and believe, and thereon allege, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor[2] are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on Plaintiffs' Home herein.

31.   Plaintiffs are informed and believe, and thereon allege, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and

delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust. Plaintiffs further allege, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL, which Mortgage Files include the original Deeds of Trust, herein.

32.    Based upon the foregoing, Plaintiffs are further informed and believe, and thereon allege, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiffs' mortgage, including, but not limited to:

   a.  The splitting or separation of title, ownership and interest in Plaintiffs' Note and Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Deed of Trust;

   b.  When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

   c.  The failure to assign and transfer the beneficial interest in Plaintiff's Deed of Trust to LASALLE BANK, NATIONAL ASSOCIATION, in accordance with the PSA of the Defendants, as Securitization Participants;

   d.  The failure to endorse, assign and transfer Plaintiffs' Note and/or mortgage to Defendant LASALLE BANK NATIONAL ASSOCIATION, as Trustee for MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL, in accordance with the PSA;

   e.  No Assignments of Beneficiary or Endorsements of the Note to each of the intervening entities in the transaction ever occurred, which is conclusive proof

that no true sales occurred as required under the PSA filed with the SEC; and

    f.   Defendants, and each of them violated the pertinent terms of the PSA.

33.    Plaintiffs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

34.    On or about FEBRUARY 2, 2011, Plaintiffs received a Summon of a Notice of Unlawful Detainer from the Court which was Plaintiffs' first notice that the Foreclosing Defendants had foreclosed on the Subject Property.

35.    Thereafter, Plaintiffs then had to defend against the Unlawful Detainer Action in pro per.  Unfortunately, a judgment was entered against them and a Writ of Possession was issued on or about July 23, 2011.  Plaintiffs will be locked out of their home by the Sheriffs shortly.

**FIRST CAUSE OF ACTION**
**CIVIL RICO**

**COUNT ONE**

Acquisition and Maintenance of an Interest in and Control of
an *Enterprise* Engaged in a *Pattern of Racketeering Activity*:
18 U.S.C. §§ <u>1961</u>(5), <u>1962</u>(b)

36.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

37.     At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO *enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

38.     During the ten (10) calendar years preceding  August 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

39.     Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

40.     Pursuant to the original Statutes at Large, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  See 84 Stat. 947, Sec. 904, Oct. 15, 1970.

41.     *Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise).

**COUNT TWO:**
Conduct and Participation in a RICO *Enterprise*
through a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(c)

42.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

43.     At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

44.     Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity,* all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

45. ·    During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

46.     Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

47.     Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court. Said construction rule was never codified in Title 18 of the United States Code, however. *Respondeat superior* (as explained above).

**COUNT THREE:**
Conspiracy to Engage in a
*Pattern of Racketeering Activity:*

18 U.S.C. §§ 1961(5), 1962(d)

48.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.   Substance prevails over form.

49.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(b) and (d).

50.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did also conspire to conduct and participate in said RICO *enterprise* through a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(c) and (d).   See also 18 U.S.C. §§ 1961(4), (5) and (9).

51.    During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

52.    Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).

53.    Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court.   Said construction rule was never codified in Title 18 of the United States Code, however.   *Respondeat superior* (as explained above).

54.    18 USC 891-984 Extortinate credit transactions;   1341 mail fraud, 1343 wire fraud, 1344 financial institution fraud, 1503 obstruction of justice, 1952 rackeetering, 1956 laundering of monetary instruments, 1957 monetary transaction derived from specified unlawful

1  activity, and 29 USC 186 501c – fraud connected with a case under title 11, fraud in the sale of

2  securities.

3  **SECOND CAUSE OF ACTION**
   **NEGLIGENCE**

4  **(AGAINST THE FORECLOSING DEFENDANTS)**

5      55.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby

6  incorporates same by reference, as if all were set forth fully herein.  Substance prevails over

7  form.

8      56.    At all times relevant herein, the Foreclosing Defendants, acting as Plaintiffs'

9  lender and loan servicer, had a duty to exercise reasonable care and skill to maintain proper and

10 accurate loan records and to discharge and fulfill the other incidents attendant to the

11

12 maintenance, accounting and servicing of loan records, including, but not limited, accurate

13 crediting of payments made by Plaintiffs.

14     57.    In taking the actions alleged above, and in failing to take the actions as alleged

15 above, the Foreclosing Defendants breached their duty of care and skill to Plaintiffs in the

16 servicing of Plaintiffs' loan by, among other things, failing to properly and accurately credit

17
   payments made by Plaintiffs toward the loan, preparing and filing false documents, and
18
   foreclosing on the Subject Property without having the legal authority and/or proper
19

20 documentation to do so.

21     58.    As a direct and proximate result of the negligence and carelessness of the

22 Foreclosing Defendants as set forth above, Plaintiffs suffered general and special damages in an

23 amount to be determined at trial.

24

25         **THIRD CAUSE OF ACTION**
           **FRAUDULENT CONVEYANCE**
26

27     59.    Plaintiff now re-alleges each and every allegation as set forth above, and

28

---

PLAINTIFFS' COMPLAINT
14

1   hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails

2   over form.

3       60.       Defendants have wrongfully and unlawfully transferred Plaintiff's property

4   among themselves in violation of various state, federal and consumer protection laws with

5   fraudulent documents.  Defendants recorded fraudulent documents in the County Recorder's

6   Office.

7

**FOURTH CAUSE OF ACTION**
**REAL ESTATE FRAUD**

8

9       61.       Plaintiff now re-alleges each and every allegation as set forth above, and

10   hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails

11   over form.

12       62.       Plaintiff alleges that Defendants violated RESPA and TILA by postering to be

13   secured creditors when they willfully and knowingly purchased a mortgage in default.

14   Defendants cannot be secured creditors under current law.

15       63.       *Taylor v. State Compensation Insurance Fund, 175 Mont. 432, 913 P.2d 1242*

16   *(1996) To sustain a claim of fraud, insurer was required to plead and prove each of the nine*

17   *elements of fraud: (1) a representation; (2) falsity of the representation; (3) materiality of the*

18   *representation; (4) speaker's knowledge of the falsity of the representation; (5) the speaker's*

19   *intent it should be relied upon; (6) the hearer's ignorance of the falsity of the representation;*

20   *(7) the hearer's reliance on the representation; (8) the hearer's right to rely on the*

21   *representation; and (9) the hearer's consequent and proximate injury caused by reliance on*

22   *the representation.*

23

24

**FIFTH CAUSE OF ACTION FOR**
**CANCELLATION OF A VOIDABLE CONTRACT UNDER REV & TAX CODE §§**
**23304.1, 23305A AND VIOLATION OF CAL. CORP. CODE §§ 191(C)(7)**
**(AGAINST THE FORECLOSING DEFENDANTS)**

25

26

27

28

---

64.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

65.     MERS operates as a record-keeping database company in which MERS contracts with lenders to track security instruments in return for an annual fee.

65.     Based upon information and belief, MERS was at all times herein operating in the State of California without registering as a foreign corporation to avoid paying taxes to the state.

66.     As a result of MERS's failure to comply with the California franchise tax laws, the Deed of Trust alleged herein is voidable by Plaintiff pursuant to Rev & Tax Code §§ 23304.1, 23304.1(b), and 23305a.

67.     Moreover, MERS is not in the business of creating evidences, and it is not a foreign lending institution.  It does not originate loans, never had any true interest in the subject loan or Deed of Trust, and thereby does not meet any legal exceptions to the registration requirement for foreign corporations.

68.     MERS conducted business in California when it was not registered with the Secretary of State.  Specifically, it prepared and/or executed a Substitution of Trustee and Assignment of Deed of Trust in April and May 2009.  The substitution allowed the new Trustee, CR TITLE SERVICES INC., to record a Notice of Default on the Subject Property.

69.     At all relevant times herein, MERS was not registered in California and could not prepare or execute the Assignment of Deed of Trust. MERS had no legal authority to take such action.  Deeds of Trust are contractual in nature.  A contract made by a corporation doing business in California while that corporation has failed to perform its franchise tax obligations is voidable at the option of any party to the contract, other than the [delinquent] taxpayer. Thus,

MERS did not have the legal capacity to enter into a contract with Plaintiffs or anyone else, and Plaintiffs have the option of voiding the contract. Therefore, any action that MERS took with regard to assigning the within deed of trust and substituting the trustee would be ultra vires and void.

70.     Plaintiffs hereby expressly request an adjudication to the effect that the assignment of the deed of trust and substitution of trustee by MERS are void.

## SIXTH CAUSE OF ACTION
## TO SET ASIDE TRUSTEE'S SALE
## (AGAINST THE FORECLOSING DEFENDANTS)

71.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 64, inclusive, as though fully set forth herein.

72.     The Foreclosing Defendants never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because the Foreclosing Defendants' interest was never acknowledged and recorded in violation of Civil Code § 2932.5, resulting in the non-judicial foreclosure sale being void ab initio.

73.     Moreover, the Foreclosing Defendants never had the legal authority to foreclose because the instrument (Deed of Trust), which permitted foreclosure if the borrower was in default, is void as it was improperly assigned and/or transferred to the Foreclosing Defendants from the original lender.  Therefore, the Deed of Trust could not provide a basis for a foreclosure, and the non-judicial foreclosure is void ab initio.

74.     Accordingly, Plaintiffs hereby request an order of this Court that the Trustee's Sale was irregular in that it was legally void and conducted without any right or privilege by the Foreclosing Defendants.

## SEVENTH CAUSE OF ACTION

## TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE
### (AGAINST THE FORECLOSING DEFENDANTS)

75.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

76.     Although the trustee's deed upon sale appears valid on its face, it is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the Deed of Trust which purportedly secured the Note, which served as the basis for a claim to have the right to conduct a non-judicial foreclosure was at all times void due to the wrongful and improper assignment to the Foreclosing Defendants.

77.     Plaintiffs are therefore entitled to an order that the Trustee's Deed Upon Sale is void ab initio and cancelling such Trustee's Deed.

## EIGHTH CAUSE OF ACTION
## TO VOID OR CANCEL ASSIGNMENT OF DEED OF TRUST.
### (AGAINST THE FORECLOSING DEFENDANTS)

78.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

79.     The assignment of the deed of trust is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the MERS did not have standing or the legal authority to assign the deed of trust which purportedly secured the Note, and which served as the basis for a claim to have the right to conduct a non-judicial foreclosure.  Thus, the assignment of the deed of trust was at all times void.

80.     Plaintiffs are therefore entitled to an order that the Assignment of the Deed of Trust is void ab initio and cancelling such Assignment.

### NINTH CAUSE OF ACTION
### WRONGFUL FORECLOSURE
### (AGAINST THE FORECLOSING DEFENDANTS)

81.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

82.     Plaintiffs are informed and believe and thereon allege that after the origination and funding of their loan, it was sold to investors as a "mortgage backed security" and that none of the Foreclosing Defendants in this action owned this loan, or the corresponding note. Moreover, none of the Foreclosing Defendants in this action were lawfully appointed as trustee or had the original note assigned to them.  Accordingly, none of the Foreclosing Defendants in this action had the right to declare default, cause notices of default to be issued or recorded, or foreclose on Plaintiffs' interest in the Subject Property.  The Foreclosing Defendants were not the note holder or a beneficiary at any time with regard to Plaintiffs' loan.

83.     Plaintiffs further allege on information and belief that none of the Foreclosing Defendants in this action are beneficiaries or representatives of the beneficiary and, if the Foreclosing Defendants allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

84.     Plaintiffs' further allege on information and belief that the loan was sold or transferred without notifying the Plaintiffs in writing.  Therefore, the loan is void of legal rights to enforce it.

85.     Additionally, The Foreclosing Defendants violated California Civil Code §2923.5(a), which requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower or person by telephone in order to assess the borrower's financial situation and explore

options for the borrower to avoid foreclosure. "Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section."

86.     None of the Foreclosing Defendants contacted Plaintiffs to discuss their financial situation. Moreover, none of the Foreclosing Defendants explored options with Plaintiffs to avoid foreclosure. Additionally, none of the Foreclosing Defendants informed Plaintiffs of the right to have a meeting within 14 days of said contact. Accordingly, the Foreclosing Defendants did not fulfill their legal obligation to Plaintiffs.

87.     Thus, the Foreclosing Defendants engaged in a fraudulent foreclosure of the Subject Property in that the Foreclosing Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to comply with Civil Code Section 2923.5 and 2923.6.

88.     As a result of the above alleged wrongs, Plaintiffs have suffered general and special damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION FOR
## BREACH OF CONTRACT
## (AGAINST THE FORECLOSING DEFENDANTS)

89.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

90.     Plaintiffs' original loan agreement set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed.

91.     Alternatively, if the original note and deed of trust were properly assigned to

Defendants, Defendants breached the note and deed of trust that Plaintiffs signed in July 2007. The terms of the note required payments made by Plaintiffs to be applied properly to the note.

92.   The Foreclosing Defendants breached the note and deed of trust by failing to apply the payments made by Plaintiffs in August and September 2008 to Plaintiffs' loan, the result of which led to the Foreclosing Defendants eventually foreclosing on the Subject Property.

93.   As a proximate result of Defendants' breaches, Plaintiffs have suffered compensatory damages in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION FOR
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (AGAINST THE FORECLOSING DEFENDANTS)

94.   Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

95.   Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

96.   Alternatively, if the note and deed of trust was validly and properly assigned to the Foreclosing Defendants, the Foreclosing Defendants did not act in good faith and did not deal fairly with Plaintiffs in connection with the note and deed of trust when they refused to

1   properly apply the August and September 2008 payments to their loan and thereafter foreclosed

2   on the Subject Property even though Plaintiffs provided proof of payments for the allegedly

3   skipped months and thereafter refused to resolve the mistake with Plaintiffs in an equitable

4   fashion.

5       97.    The Foreclosing Defendants enjoyed substantial discretionary power affecting the

6   rights of Plaintiff during the events alleged in this Complaint.  They were required to exercise

7   such power in good faith.

8

9       98.    The Foreclosing Defendants engaged in such conduct to drive Plaintiffs into

10  foreclosure so that they could acquire the Subject Property with its large equity at a bargain

11  basement price.  These actions were a bad faith breach of the contract between Plaintiffs and the

12  Foreclosing Defendants which show that they had no intention of performing the contract,

13  consisting of the original note and deed of trust, in good faith.

14      99.    MERS willfully breached their implied covenant of good faith and fair dealing

15  with Plaintiff when MERS allowed their alleged agent to execute the Assignment of the Deed of

16

17  Trust in order to appoint a new Trustee to begin foreclosure on the Subject Property.

18      100.   As a result of the Foreclosing Defendants' breaches of this covenant, Plaintiffs

19  have suffered general and special damages in an amount to be determined at trial.

20

21              **TWELFTH CAUSE OF ACTION FOR**
                **UNJUST ENRICHMENT**
22              **(AGAINST THE FORECLOSING DEFENDANTS)**

23      101.   Plaintiff now re-alleges each and every allegation as set forth above, and hereby

24  incorporates same by reference, as if all were set forth fully herein.  Substance prevails over

25

26  form.

27

28

102.    By their wrongful acts and omissions, the Foreclosing Defendants have been unjustly enriched at the expense of Plaintiffs, and thus Plaintiffs have been unjustly deprived.

103.    By reason of the foregoing, Plaintiffs seek restitution from the Foreclosing Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Foreclosing Defendants from their wrongful conduct.

## THIRTEENTH CAUSE OF ACTION FOR
## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.
## (AGAINST THE FORECLOSING DEFENDANTS)

104.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

105.    California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

106.    As more fully described above, the Foreclosing Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

107.    Specifically, the Foreclosing Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by

(a)  Assessing improper or excessive late fees;

(b)  Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

(c)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(d)  Misapplying or failing to apply customer payments;

(e)  Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

(f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

(g)  Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

108.    The Foreclosing Defendants fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

109.    Moreover, the Foreclosing Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal

foreclosure proceedings.  The scheme implemented by the Foreclosing Defendants is designed to defraud California consumers and enrich the Foreclosing Defendants.

110.   The foregoing acts and practices have caused substantial harm to California consumers.

111.   As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Foreclosing Defendants, Plaintiffs and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

112.   By reason of the foregoing, the Foreclosing Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.  Additionally, Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections.

**FOURTEENTH CAUSE OF ACTION FOR**
**QUIET TITLE**
**(AS TO DEFENDANTS TRUST; ALL PERSONS UNKNOWN, CLAIMING ANY**
**LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE**
**PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE,**
**OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO; AND DOES 1 THROUGH 20)**

113.   Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

114.   Plaintiffs are the equitable owners of the Subject Property which has the following legal description:

115.   Plaintiffs seek to quiet title against the claims of Defendants Trust ; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1 through 20 (collectively referred to herein as the "Title Defendants") as the Title Defendants hold themselves out as entitled to fee simple ownership of the Subject Property by NOVEMBER 11, 2010,  In fact, the Title Defendants had no right to title or interest in the Subject Property and no right to entertain any rights of ownership including the right to foreclosure, offering the Subject Property for sale at a trustee's sale, demanding possession or filing cases for unlawful detainer.  Nevertheless, the Title Defendants proceeded with a non-judicial foreclosure sale, through CR TITLE SERVICES INC., as alleged trustee, illegally and with unclean hands.  Plaintiffs are willing to tender the amount received subject to equitable adjustment for the damage caused to the Plaintiffs by the Title Defendants' activities.

116.   In MAY 4, 2007, Plaintiffs executed the Deed of Trust which listed the trustee as VERDUGO TRUSTEE SERVICE CORPORATION.  Later, CR TITLE SERVICES INC., foreclosed on the Subject Property.  At the time that CR TITLE SERVICES INC.,  signed the Notice of Default, CR TITLE SERVICES INC.,  had not been substituted as the trustee in place of VERDUGO TRUSTEE SERVICE CORPORATION,  As the Notice of Default must be signed by the trustee, either original or substituted, and the beneficiary or trustee, either original or substituted, must comply with California Civil Code Section 2923.5, the trustee's sale is void because CR TITLE SERVICES INC., was not the trustee at the time that it signed the Notice of Default and allegedly complied with Section 2923.5.  Thus, the trustee and beneficiary failed to follow the statutory rules for a valid foreclosure under the California Civil Code and it is, therefore, void.

117.   Additionally, the trustee's sale is void because the requirements of Civil Code Section 2923.5 were not complied with by CR TITLE SERVICES INC., or any of the Foreclosing Defendants.

118.   Plaintiffs seek to quiet title as of MAY 4, 2007 Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that the Title Defendants and each of them be declared to have no interest estate, right, title or interest in the subject property and that the Title Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiffs' rights.

**FIFTEENTH CAUSE OF ACTION FOR**
**SLANDER OF TITLE**
**(AGAINST THE FORECLOSING DEFENDANTS)**

119.   Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

120.   Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or a beneficiary's assignee or the agent of a beneficiary or its assignee may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale.

121.   CR TITLE SERVICES INC., purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of Trust, wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

122.   Later, CR TITLE SERVICES INC., , again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of Trust, wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the

Subject Property.

123.   Finally, CR TITLE SERVICES INC., , again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of Trust, wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

124.   None of the Foreclosing Defendants, whether jointly or severally, were ever a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property.  Accordingly, they wrongfully caused the recording of the Notice of Default, Notice of Trustee's Sale and Trustee's Deed Upon Sale against the Subject Property.

125.   Trust, wrongfully and without privilege, has published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs' interest in the Subject Property.

126.   .By doing the acts described above, the Foreclosing Defendants have slandered Plaintiffs' title to the Subject Property.

127.   In that the conduct and acts of the Foreclosing Defendants violated, among others, California Civil Code section 2924(a)(1)(C), such conduct and acts were not privileged.

128.   The conduct of the Foreclosing Defendants caused Plaintiffs to suffer general and special damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against the Defendants and each of them, jointly and severally, as follows:

1.      For a declaration of the rights and duties of the parties, specifically that the foreclosure of Plaintiffs' residence was wrongful.

2.      For issuance of an Order canceling all Trustee's Deed Upon Sale.

3.      To vacate the Trustee's Deed.

4.      To vacate and set aside the foreclosure sale.

5.      To quiet title in favor of Plaintiff and against Defendants.

6.      For compensatory, special, general and punitive damages according to proof against all Defendants.

7.      Pursuant to Business and Professions Code § 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

8.      For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorneys fees according to proof.

9.      For reasonable costs of suit and such other and further relief as the Court deems proper.

DATED: 9/7/2011

BELINDA DE GUZMAN and FAUSTINO DE GUZMAN
In Pro Se

# EXHIBIT "A"

# *SECURITIZATION ANALYSIS REPORT*

*prepared
for*

BELINDA DE GUZMAN

*For Property Address*

## 11547 VIMY ROAD, GRANADA HILLS, CA 91344

*Prepared on:*

## JUNE 29, 2011

By:

# TWIN BUILDERS FOUNDATION CORPORATION

*COPYRIGHT 2011 , COPYRIGHT 2011
-All Rights Reserved-*

# SECTION 1:   TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| BELINDA DE GUZMAN | N/A |
| CURRENT ADDRESS | SUBJECT ADDRESS |
| 11547 VIMY ROAD, GRANADA HILLS, CA 91344 | 11547 VIMY ROAD, GRANADA HILLS, CA 91344 |

## TRANSACTION PARTICIPANTS

| MORTGAGE BROKER | MORTGAGE SERVICER | MORTGAGE MORTGAGE NOMINEE/BENEFICIARY |
|---|---|---|
| N/A | SAXON MORTGAGE SERVICES, INC. | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. MIN 100011520043052879 |
| **ORIGINAL MORTGAGE LENDER** | **MORTGAGE TRUSTEE** | **TITLE COMPANY** |
| CITIMORTGAGE, INC. 1000 TECHNOLOGY DRIVE, O' FALLON, MO 63368 | VERDUGO TRUSTEE SERVICE CORPORATION | PROGRESSIVE TITLE |

"COPYRIGHT 2011 , COPYRIGHT 2011
-All Rights Reserved-

# SECTION 2:   SECURITIZATION

## SECURITIZATION PARTICIPANTS:

| ORIGINATOR/LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| CITIMORTGAGE, INC. | MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC | MORGAN STANLEY CAPITAL I INC. |
| ISSUING ENTITY | TRUSTEE | MASTER SERVICER/ SERVICER |
| MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL | LASALLE BANK NATIONAL ASSOCIATION | SAXON MORTGAGE SERVICES, INC. |
| CUSTODIAN | CUT - OFF DATE | CLOSING DATE |
| LASALLE BANK NATIONAL ASSOCIATION | JUNE 1, 2007 | ON OR ABOUT JUNE 28, 2007 |
| SEC CIK # | SEC ACCESSION # | DATE FILED WITH SEC |
| 0001403208 | 0001144204-07-034346 | 06/29/2007 |

"COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved-

MORGAN STANLEY DEAN WITTER CAPITAL FINC (File) CIK:
0000762153 (see all company filings)
IRS No.: 133291626 | State of Incorp.: DE | Fiscal Year End: 1231
Type: 42465 | Act: 33 | File No.: 333-130684 | Film No.: 07950199
SIC: 6189 Asset-Backed Securities
Assistant Director 5

Business Address   Mailing Address
1585 BROADWAY   1585 BROADWAY
2ND FLOOR   2ND FL
NEW YORK NY 10036   NEW YORK NY 10036
2127611700

Morgan Stanley Mortgage Loan Trust 2007-9SL (File) CIK: 0001403208
(see all company filings)
State of Incorp.: DE | Fiscal Year End: 1231
Type: 42465 | Act: 33 | File No.: 333-130684-36 | Film No.: 07950198
SIC: 6189 Asset-Backed Securities
Assistant Director 5

Business Address   Mailing Address
1585 BROADWAY   1585 BROADWAY
2ND FLOOR   2ND FL
NEW YORK NY 10036   NEW YORK NY 10036
2127611700

*$269,086,000*
*(Approximate)*

*Mortgage Pass-Through Certificates, Series 2007-9SL*

*Morgan Stanley Mortgage Loan Trust 2007-9SL*
*(Issuing Entity)*

*Morgan Stanley Capital I Inc.*
*(Depositor)*

*Morgan Stanley Mortgage Capital Holdings LLC*
*(Sponsor and Seller)*

*Saxon Mortgage Services, Inc.*
*(Servicer)*

## SUMMARY

This summary highlights selected information from this document and does not contain all of the information that you need to consider in making an investment decision. To understand the terms of the offering of the offered certificates, you should read carefully this entire document and the accompanying prospectus.

**Relevant Parties**

| | |
|---|---|
| | Morgan Stanley Mortgage Loan Trust 2007-9SL. The trust will be established under a trust agreement, dated as of the cut-off date, between Morgan Stanley Capital I Inc., as depositor and LaSalle Bank National Association, as auction administrator and trustee. |
| Issuing Entity | |
| Depositor | Morgan Stanley Capital I Inc., a Delaware corporation. The depositor's address is 1585 Broadway, New York, New York 10036, telephone number (212) 761-4000. |
| | See "The Depositor" in the accompanying prospectus. |
| Sponsor and Seller | Morgan Stanley Mortgage Capital Holdings LLC, a New York limited liability company, which is an affiliate of the depositor, the servicer and of Morgan Stanley & Co. Incorporated, the underwriter. Morgan Stanley Mortgage Capital Holdings LLC's address is 1585 Broadway, New York, New York 10036. |
| | See "Description of the Mortgage Loans—Assignment of the Mortgage Loans" in this prospectus supplement. |
| Trustee and Auction Administrator | LaSalle Bank National Association, a national banking association, will act as trustee under the trust agreement. LaSalle Bank National Association's offices are located at |

"COPYRIGHT 2011 , COPYRIGHT 2011
-All Rights Reserved-

|  | 135 South LaSalle Street, Suite 1511, Chicago, Illinois, 60603. LaSalle Bank National Association, in its capacity as trustee, will also act as auction administrator under the trust agreement. |
|---|---|
|  | See "Servicing of the Mortgage Loans" and "The Trustee" in this prospectus supplement. |
| Originators and Servicer | The seller previously acquired the mortgage loans from various correspondent lenders and other mortgage loan sellers who each originated less than 10% of the mortgage loans. On the closing date, the seller will sell all of its interest in the mortgage loans (other than servicing rights which will be retained by the seller) to the depositor. |
|  | Saxon Mortgage Services, Inc. will act as the servicer of the mortgage loans. |
|  | See "The Servicer" and "Servicing of the Mortgage Loans" in this prospectus supplement. |
| **Relevant Dates** |  |
| Cut-off Date | June 1, 2007. |
| Closing Date | On or about June 28, 2007. |
| Distribution Date | The 25th day of each month or, if that day is not a business day, the next business day, beginning July 25, 2007. |
| Interest Accrual Period | For any distribution date and (a) each class of offered certificates, the one-month period commencing on the immediately preceding distribution date (or, in the case of the first distribution date, from and including the closing date) and ending on the day immediately preceding such distribution date and (b) the Class B-4 and Class B-5 Certificates, the prior calendar month. |
| Record Date | For the offered certificates and any distribution date, the business day immediately preceding that distribution date, or if the offered certificates are no longer book-entry certificates, the last business |

## ASSIGNMENT OF LOANS

   Under the Assignment Agreements and the Mortgage Loan Purchase Agreement, Morgan Stanley Mortgage Capital Holdings LLC (the **"Seller"**) will sell the Mortgage Loans to the Depositor and the Depositor will sell the Mortgage Loans to the Trust Fund. Pursuant to the Assignment Agreements, the Seller will transfer its rights and obligations under the underlying mortgage loan purchase agreements with respect to certain representations, warranties and covenants made by the Originators relating to, among other things, certain characteristics of the Mortgage Loans. Pursuant to the Trust Agreement and the Mortgage Loan Purchase Agreement, the Seller will make certain representations, warranties and covenants relating to certain characteristics of certain Mortgage Loans. Subject to the limitations described below, the Originator or the Seller will be obligated as described herein to purchase or substitute a similar mortgage loan for any related Mortgage Loan as to which there exists deficient documentation or as to which there has been an uncured breach of any such representation or warranty relating to the characteristics of the Mortgage Loan that materially and adversely affects the value of such Mortgage Loan or the interests of the Certificateholders or the Certificate Insurer in such Mortgage Loan (a **"Defective Mortgage Loan"**).

   See "Description of the Agreements—Assignment of Assets; Repurchases" and "Representations and Warranties; Repurchases" in the accompanying prospectus.

   Pursuant to a trust agreement (the **"Trust Agreement"**), dated as of the Cut-off Date, between Morgan Stanley Capital I Inc., as depositor (the **"Depositor"**) and LaSalle Bank National Association (**"LaSalle"**), as auction administrator and as trustee (in such capacity, the **"Trustee"**), on the Closing Date the Depositor

"COPYRIGHT 2011 , COPYRIGHT 2011
-All Rights Reserved-

will sell, transfer, assign, set over and otherwise convey without recourse to the Trustee, in its capacity as trustee, all of its rights to the Mortgage Loans and its rights and obligations under the Assignment Agreements (including the right to enforce the Originators' repurchase obligations) and under the Mortgage Loan Purchase Agreement. The obligations of the Originators and the Seller with respect to the Certificates are limited to their respective obligations to purchase or substitute for Defective Mortgage Loans.

In connection with the transfer and assignment of each Mortgage Loan, the Depositor will deliver or cause to be delivered to LaSalle Bank National Association, as custodian (the "*Custodian*"), among other things, the original promissory note or a lost note affidavit and a copy of the promissory note (the "*Mortgage Note*") (and any modification or amendment thereto) endorsed in blank or to LaSalle Bank National Association as Trustee for the MSM Loan Trust 2007-9SL without recourse, the original instrument creating a lien on the related Mortgaged Property (the "*Mortgage*") with evidence of recording indicated thereon, an assignment in recordable form of the Mortgage, all recorded intervening assignments of the Mortgage and any modifications to such Mortgage Note and Mortgage (except for any such document other than Mortgage Notes not available on the Closing Date, which will be delivered to the Custodian as soon as the same is available to the Depositor) (collectively, the "*Mortgage File*").

The Custodian will review each related Mortgage File within the time period specified in the custodial agreement or promptly after the Custodian's receipt of any document permitted to be delivered after the Closing Date. The Custodian will hold such Mortgage Files in trust for the benefit of the Certificateholders and the Certificate Insurer. If at the end of such specified period, any document in a Mortgage File is found to be missing or not in compliance with the review requirements set forth in the related custodial agreement and the related Originator or the Seller, as applicable, does not cure such omission or noncompliance within the time period required under the applicable underlying mortgage loan purchase agreement or the Mortgage Loan Purchase Agreement, as applicable, and such omission or noncompliance is deemed to have a material and adverse affect on the value of that Mortgage Loan, then the applicable Originator, pursuant to such underlying mortgage loan purchase agreement, as modified by the related Assignment Agreement, or the Seller pursuant to the Trust Agreement or the Mortgage Loan Purchase Agreement, is obligated to purchase the related Defective Mortgage Loan from the Trust Fund at a price equal to the sum of (a) 100% of the Stated Principal Balance thereof, (b) unpaid accrued interest thereon from the Due Date to which interest was last paid by the mortgagor to the Due Date immediately preceding the repurchase and (c) costs and damages incurred by the Trust Fund and the Trustee in connection with certain repurchases that arise out of violations of predatory or abusive lending laws. Rather than purchase the Defective Mortgage Loan as provided above, the applicable Originator or the Seller may remove such Mortgage Loan (a "*Deleted Mortgage Loan*") from the Mortgage Pool and substitute in its place one or more mortgage loans of like kind (such loan a "*Replacement Mortgage Loan*"); provided, however, that such substitution is permitted only within two years after the Closing Date and may not be made unless an opinion of counsel is provided to the effect that such substitution would not disqualify any REMIC or result in a prohibited transaction tax under the Code.

Any Replacement Mortgage Loan generally will, on the date of substitution, among other characteristics set forth in the related underlying mortgage loan purchase agreement, (i) have an outstanding principal balance, after deduction of all scheduled payments due in the month of substitution, not in excess of the Stated Principal Balance of the Deleted Mortgage Loan (the amount of any shortfall to be deposited in the Distribution Account in the month of substitution (a "*Substitution Adjustment Amount*")), (ii) have a Mortgage Rate not less than (and not more than two percentage points greater than) the Mortgage Rate of the Deleted Mortgage Loan, (iii) have a remaining term to maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan and (iv) comply

Page | 6

"COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved-

with all of the representations and warranties set forth in the related underlying mortgage loan purchase agreement, as modified by the related Assignment Agreement. This cure, repurchase or substitution obligation constitutes the sole remedy available to the Certificateholders or the Trustee for omission of, or a material defect in, a Mortgage File.

## Insurance or Guarantees for the Mortgage Loans
Page 75 of 424(B)5

If so provided in the prospectus supplement for a series of certificates, the mortgage loans in the related trust fund will be covered for various default risks by insurance policies or guarantees. A copy of any material instrument for a series will be filed with the Securities and Exchange Commission as an exhibit to a Current Report on Form 8-K to be filed within 15 days of issuance of the certificates of the related series.

### Letter of Credit

If so provided in the prospectus supplement for a series of certificates, deficiencies in amounts otherwise payable on the certificates or certain classes thereof will be covered by one or more letters of credit, issued by the letter of credit bank. Under a letter of credit, the letter of credit bank will be obligated to honor draws thereunder in an aggregate fixed dollar amount, net of unreimbursed payments thereunder, generally equal to a percentage specified in the related prospectus supplement of the aggregate principal balance of the mortgage loans and mortgage-backed securities on the related cut-off date or of the initial aggregate certificate balance of one or more classes of certificates. If so specified in the related prospectus supplement, the letter of credit may permit draws in the event of only certain types of losses and shortfalls. The amount available under the letter of credit will, in all cases, be reduced to the extent of the unreimbursed payments thereunder and may otherwise be reduced as described in the related prospectus supplement. The obligations of the letter of credit bank under the letter of credit for each series of certificates will expire at the earlier of the date specified in the related prospectus supplement or the termination of the trust fund. A copy of any letter of credit for a series will be filed with the Securities and Exchange Commission as an exhibit to a Current Report on Form 8-K to be filed within 15 days of issuance of the certificates of the related series.

### Insurance Policies and Surety Bonds

If so provided in the prospectus supplement for a series of certificates, deficiencies in amounts otherwise payable on the certificates or certain classes thereof will be covered by insurance policies or surety bonds provided by one or more insurance companies or sureties. The instruments may cover, with respect to one or more classes of certificates of the related series, timely distributions of interest or full distributions of principal on the basis of a schedule of principal distributions set forth in or determined in the manner specified in the related prospectus supplement. A copy of any instrument for a series will be filed with the Securities and Exchange Commission as an exhibit to a Current Report on Form 8-K to be filed with the Securities and Exchange Commission within 15 days of issuance of the certificates of the related series.



-All Rights Reserved-

424B5:
http://www.sec.gov/Archives/edgar/data/762153/000114420407034346/v079559_424b5.htm

MORGAN STANLEY CAPITAL I INC.
*Depositor*

and

LASALLE BANK NATIONAL ASSOCIATION
*Trustee*

---

TRUST AGREEMENT
Dated as of June 1, 2007

---

MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-9SL

ARTICLE II

DECLARATION OF TRUST;
ISSUANCE OF CERTIFICATES

Section 2.01    Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans.

(a)       Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02 and 2.05; in trust, all the right, title and interest of the Depositor in and to the Trust Fund. Such conveyance includes, without limitation, (i) the Mortgage Loans, including the right to all payments of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date (other than Scheduled Payments due on or before such date), and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date; (ii) all of the Depositor's right, title and interest in and to all amounts from time to time credited to and the proceeds of the Distribution Account, any Custodial Accounts or any Escrow Account established with respect to the Mortgage Loans; (iii) all of the rights and obligations of the Depositor as assignee of the Seller with respect to the Seller's rights and obligations under the Purchase Agreement and Servicing Agreement pursuant to the Acknowledgements; (iv) all of the Depositor's right, title or interest in REO Property and the proceeds thereof; (v) all of the Depositor's rights under any Insurance Policies related to the Mortgage Loans; (vi) $100 (which amount has been delivered by the Depositor to the Trustee to be held in the Distribution Account until distributed to the Holders of the Class P Certificates pursuant to Section 5.02(d)); and (vii) if applicable, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and the Certificate Insurer and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund.

The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in the creation or assumption by the Trustee of any obligation of the Depositor, the Seller or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth therein.

Page | 8

*COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

In connection with such transfer and assignment of the Mortgage Loans, the Custodian acting on the Trustee's behalf, will continue to hold the applicable documents or instruments listed below with respect to each related Mortgage Loan (each, a "Trustee Mortgage File") so transferred and assigned:

(i) with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of LaSalle Bank National Association, as Trustee of the Morgan Stanley Mortgage Loan Trust 2007-9SL, Mortgage Pass-Through Certificates, without recourse, or in blank (in each case, with all necessary intervening endorsements, as applicable);

(ii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon, or if the original Mortgage has not yet been returned from the recording office, a copy of such Mortgage certified by the applicable Originator, title company, escrow agent or closing attorney to be a true copy of the original of the Mortgage which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located, and in the case of the each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon;

(iii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the Assignment of Mortgage in form and substance acceptable for recording in the relevant jurisdiction, such assignment being either (A) in blank, without recourse, or (B) endorsed to "LaSalle Bank National Association", as Trustee of Morgan Stanley Mortgage Loan Trust 2007-9SL, Mortgage Pass-Through Certificates, without recourse";

(iv) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the originals of all intervening assignments of the Mortgage, if any, with evidence of recording thereon, or if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified by the applicable Originator, title company, escrow agent or closing attorney to be a true copy of the original of the assignment which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located;

(v) with respect to each Mortgage Loan (other than a Cooperative Loan), the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(vi) if any, with respect to each Mortgage Loan (other than a Cooperative Loan), the original policy of title insurance (or a true copy thereof) with respect to any such Mortgage Loan, or, if such policy has not yet been delivered by the insurer, the title commitment or title binder to issue same;

(vii) if any, with respect to each Mortgage Loan (other than a Cooperative Loan), the original power of attorney and guaranty agreement with respect to such Mortgage Loan;

(viii) with respect to each Mortgage Loan which constitutes a Cooperative Loan:

(a) the original of any Security Agreement or similar document executed in connection with the Cooperative Loan;

(b) the original Recognition Agreement and the original Assignment of Recognition Agreement;

(c) UCC-1 financing statements with recording information thereon from the appropriate governmental recording offices if necessary to perfect the security interest of the Cooperative Loan under the Uniform Commercial Code in the jurisdiction in which the Cooperative Property is located, accompanied by UCC-3 financing statements executed in blank for recordation of the change in the secured party thereunder;

(d) an Estoppel Letter and/or Consent;

(e) a search for (i) federal tax liens, mechanics' liens, lis pendens, judgments of record or otherwise against (x) the Cooperative Corporation and (y) the seller of the Cooperative Unit, (ii) filings of financing statements and (iii) the deed of the cooperative project into the Cooperative Corporation;

Page | 9

"COPYRIGHT 2011 , COPYRIGHT 2011
-All Rights Reserved-

(f) the guaranty of the Mortgage Note and Cooperative Loan, if any;

(g) the original Proprietary Lease and the Assignment of Proprietary Lease executed by the Mortgagor in blank or if the Proprietary Lease has been assigned by the Mortgagor to the Seller, then the Seller must execute an assignment of the Assignment of Proprietary Lease in blank; and

(h) if any, the original or certified copy of the certificates evidencing ownership of the Cooperative Shares issued by the Cooperative Corporation and related assignment of such certificates or an assignment of such Cooperative Shares, in blank, executed by the Mortgagor with such signature guaranteed.

(ix) Any other document or instruments required to be delivered under the Custodial Agreement.

Notwithstanding the foregoing, in the event of any inconsistency between any provision of this Agreement and a provision of the Custodial Agreement, then the provision of the Custodial Agreement shall control.

In addition, in connection with the assignment of any MERS Mortgage Loan, it is understood that the related Originator will cause the MERS® System to indicate that such Mortgage Loans have been assigned by the related Originator to the Trustee in accordance with this Agreement for the benefit of the Certificateholders and the Certificate Insurer by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS® System to identify the series of Certificates issued in connection with such Mortgage Loans. It is further understood that the related Originator will not, and the Trustee hereby agrees that it will not alter the information referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

(b) In instances where a title insurance policy is required to be delivered to the Custodian on behalf of the Trustee and is not so delivered, the Depositor will provide a copy of such title insurance policy to the Custodian on behalf of the Trustee, as promptly as practicable after the execution and delivery hereof, but in any case within 180 days of the Closing Date.

(c) For Mortgage Loans (if any) that have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of delivering the above documents, herewith delivers such amount to the Trustee, and delivers to the Trustee, the Certificate Insurer and the Custodian, an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Distribution Account pursuant to Section 4.01 have been so deposited. All original documents that are not delivered to the Custodian on behalf of the Trustee shall be held by the related Originator in trust for the benefit of the Trustee, the Certificateholders and the Certificate Insurer.

(d) Neither the Depositor nor the Trust will acquire or hold any Mortgage Loan that would violate the representations made by the Seller set forth in clauses (iv) through (vi) of Section 2.05(b) hereof.

**PSA:**

http://www.sec.gov/Archives/edgar/data/1403208/000114420407036480/v080634_ex4-1.htm

"COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved-

## TRACKING THE DEED AND THE NOTE

| DEED | DATE | NOTE | DATE |
|---|---|---|---|
| CITIMORTGAGE, INC. | MAY 1, 2007 | CITIMORTGAGE, INC. | MAY 1, 2007 |
|  |  | MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL | JUNE 1, 2007 |

The Deed of Trust and the Note have taken two distinctly different paths. The Deed of Trust was never transferred. The Note was however pooled, sold and transferred- the borrower's loan of $768,000 was combined with other loans and mortgages and this pool of loans and mortgages is valued at approximately $269,086,000 (approximate). The links are:

**424B5:**

http://www.sec.gov/Archives/edgar/data/762153/000114420407034346/v079559_424b5.htm

**PSA:**

http://www.sec.gov/Archives/edgar/data/1403208/000114420407036480/v080634_ex4-1.htm

Page | 11

*COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

# SECURITIZATION STRUCTURE

### THE CORRECT PROCESS OF SECURITIZATION



### HOW LENDERS "SIDE-STEPPED" THE PROCESS



*COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

# SECTION 3:    FORECLOSURE

### Chain of Title and Chain of Note
### Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Deed Possession | | Chain of Note Possession | |
|---|---|---|---|
| Date | Original Deed of Trust | Date | Note Holder |
| DATE: 05/04/07<br>Instrument #<br>20071085051<br>Official Records,<br>Los Angeles County<br>California | BELINDA DE GUZMAN<br>(Borrower)<br>CITIMORTGAGE INC.<br>(Lender)<br>MIN 100011520043052879 | May 1, 2007 | CITIMORTGAGE INC.<br>Lender<br>Principal Amount:<br>$768,000<br>MIN 10001152004305287 |
| DATE: 07/28/2010<br>Instrument #<br>20101032423<br>Official Records,<br>Los Angeles County<br>California | Assignment of Deed of Trust<br>Lisa Markham<br>Assistant Secretary<br>MERS | | |
| DATE: 07/28/2010<br>Instrument #<br>20101032425<br>Official Records,<br>Los Angeles County<br>California | Notice of Default<br>Steve Dunsmore<br>Stewart Title of CA | | |
| DATE: 10/29/2010<br>Instrument #<br>20101553504<br>Official Records,<br>Los Angeles County<br>California | Notice of Trustee's Sale<br>Stephanie Abcede<br>Trustee Specialist<br>CR Title Services, Inc. | | |
| DATE: 12/20/2010<br>Instrument #<br>20101877633<br>Official Records,<br>Los Angeles County<br>California | Assignment of Deed of Trust<br>Lisa Markham<br>Assistant Vice President<br>CitiMortgage, Inc. | | |
| DATE: 12/20/2010<br>Instrument #<br>20101877634<br>Official Records,<br>Los Angeles County<br>California | Trustee's Deed Upon Sale<br>Lisa Markham<br>Assistant Vice President<br>CR Title Services, Inc. | | |
| DATE: 01/28/2011<br>Instrument #<br>20110157751<br>Official Records,<br>Los Angeles County<br>California | Correction Deed<br>Lisa Markham<br>Assistant Vice President<br>CR Title Services, Inc. | | |

*COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved-

# REPORT SUMMARY

**Deed of Trust:**

- On May 1, 2007, Debtor Belinda De Guzman, executed a negotiable promissory note and a security interest in the form of a Deed of Trust in the amount of $768,000 This document was filed as document number <u>20071085051</u> in the Official Records Los Angeles County,CA. The *original lender of the promissory note is CitiMortgage Inc.,Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for lender as the beneficiary of the security interest Deed of Trust. The original trustee under this Deed of Trust is Verdugo Trustee Service Corporation.*

**Assignment of Deed of Trust:**

- An Assignment of deed of Trust was filed as document number <u>20101032423</u> in the Official Records, Los Angeles County, CA on July 28, 2010.  This document purports to be executed by MERS.

**Notice of Default:**

- On July 28, 2010 Document number <u>20101032425</u> (Notice of Default and Election to Sell Under Deed of Trust) was filed in the Official Records, Los Angeles County, California. This Document properly identifies the amount of the mortgage loan that debtors obtained on May 1, 2007, recorded <u>20071085051</u>

**Notice of Trustee's Sale:**

- On October 29, 2010, a Notice of Trustee's Sale was filed as document number <u>20101553504</u> in the Official Records, Los Angeles County, CA.

**Assignment of Deed of Trust:**

- An Assignment of deed of Trust was filed as document number <u>20101877633</u> in the Official Records, Los Angeles County, CA on December 20, 2010.  This document purports to be executed by MERS.

**Trustee Deed Upon Sale**

- On December 20, 2010, a Trustee Deed Upon Sale was filed as document number <u>20101877634</u> in the Official Records, Los Angeles County, CA.

**Correction Deed**

- On January 28, 2011, a Correction Deed was filed as document number <u>20110157751</u> in the Official Records, Los Angeles County, CA.

Page | 14

"COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved-

**MERS:**

- The Deed of Trust shows MIN <u>100011520043052879</u> and MERS SERVICER ID website <u>https://www.mers-servicerid.org/sis/search</u> indicates that Saxon Mortgage Services, Inc. is the Servicer and Morgan Stanley Mortgage Capital Holdings, LLC is the Investor.



**Process Loans, Not Paperwork™**

1 record matched your search:

Need help?

MIN: 1000115-2004305287-9      Note Date: 05/01/2007           MIN Status: Inactive

Servicer: Saxon Mortgage Services, Inc.                        Phone: (800) 594-8422
Fort Worth, TX

Investor: Morgan Stanley Mortgage Capital Holdings, LLC        Phone: (443) 627-4319
Baltimore, MD

- The California Secretary of State Business Entity websites shows that MERS has an ACTIVE status for agent of process.



©COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved-





**Securitization:**

- The NOTE was sold, transferred and securitized **MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL** with a Closing Date of **On or About June 28, 2007**

Page | 16

*COPYRIGHT 2011 , COPYRIGHT 2011
-All Rights Reserved-

# SECTION 4:   Supporting Case Laws

Under State law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee. Bear v. Golden Plan of California, Inc., 829 F.2d 705, 709 (9th Cir. 1986). Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, Cal. Civ. Code §3440, or as unperfected, Cal. Com. Code §§9313-9314. The note here specifically identified the party to whom it was payable. See Cal. Co. Code §§3109, 3201, 3203, 3204.

Under Carpenter v. Longan, the US Supreme Court ruled that the Deed of Trust/Security Instrument MUST follow the promissory note. But if the promissory note points to one party and the deed to a separate party, then the chain of title is broken. Bifurcation has occurred. Our SAR will show if your loan was securitized, thus the Deed of Trust/Security Instrument being separated from the note, it is proof that the chain of title has been broken. And since every Deed of Trust/Security Instrument states specifically that it is subject to be applicable to state and federal laws, the assignment of the promissory note WITHOUT the corresponding Deed of Trust/Security Instrument, violates state law. Sec. 109(b) of Revised Article 9 of UCC which was enacted into law in every state provides in Comment 7, "... [O]ne cannot obtain a security interest in a lien, such as a mortgage on real property, that is not also coupled with an equally effective security interest in the secured obligation." If there is a breach of the terms of the Deed of Trust/Mortgage Promissory Note VOIDABLE. A defective Trust/Security Instrument cannot be used to give the lender the "due on sale" clause. The terms of the Deed of Trust/Security Instrument must be respected in whole and one cannot pick and choose which part to respect and which part to ignore.

Prepared by:

Jesus Lim
Managing Director
Twin Builders Foundation Corporation

*COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved-

# Annexes to Exhibit "A"

Exhibit A-1.  DEED OF TRUST
Exhibit A-2.  ASSIGNMENT OF DEED OF TRUST
Exhibit A-3.  NOTICE OF DEFAULT
Exhibit A-4.  NOTICE OF TRUSTEE'S SALE
Exhibit A-5.  ASSIGNMENT OF DEED OF TRUST
Exhibit A-6.  TRUSTEE'S DEED UPON SALE
Exhibit A-7.  CORRECTION DEED
Exhibit A-8.  ROBOSIGNER'S SAMPLE SIGNATURE LIFTER FROM
THE RECORDED DOCUMENTS

"COPYRIGHT 2011  , COPYRIGHT 2011
-All Rights Reserved"

# Exhibit A-1.  DEED OF TRUST

°COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

**This page is part of your document - DO NOT DISCARD**



**20071085051**    Pages: 023



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/04/07 AT 08:00AM**

Fee: 76.00

Tax: 0.00

Other: 0.00

Total: 76.00

Title Company

**TITLE(S) :**

L E A D     S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          Number of AIN's Shown

CH931          **THIS FORM IS NOT TO BE DUPLICATED**

# PROGRESSIVE TITLE

Recording Requested By:

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

05/04/07
**20071085051**

Prepared By:
CitiMortgage, Inc.
1300 East Imperial Highway
Suite 130
Brea , CA  92821

PR0780679

———————[Space Above This Line For Recording Data]———————

## DEED OF TRUST

| MIN | 100011520043052879 |
|---|---|

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated May 1, 2007
together with all Riders to this document.

(B) "Borrower" is Belinda De Guzman, a Married Woman as her Sole and Seperate Property

Borrower's address is 14300 Terra Bella Street #66, Panorama City, CA  91402

Borrower is the trustor under this Security Instrument.

(C) "Lender" is  CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York

002004305287
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3005  1/01

-6A(CA) (0207) 01
Page 1 of 15                                       Initials
        VMP Mortgage Forms, Inc

CitiMortgage 3 2 8 13 V8



3

Lender's address is 1000 Technology Drive, O' Fallon, MO 63368-2240

(D) "Trustee" is Verdugo Trustee Service Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated May 1, 2007
The Note states that Borrower owes Lender Seven Hundred Sixty Eight Thousand

Dollars

(U.S. $768,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 06/01/2037.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Other(s): ASSUMABLE RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

002004305287
VMP -6A(CA) (0207) 01                Page 2 of 15                Initials:                Form 3005  1/01
CitiMortgage 3.2.8.13 V8

07 1085051

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                            of Los Angeles

[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]

**See Schedule A Attached Hereto and Made A Part Thereof**

Parcel ID Number:                                           which currently has the address of
11547 VIMY ROAD                                                                    [Street]
GRANADA HLS                                   [City], California 91344-2138      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

002004305287
VMP®-6A(CA) (0207).01                        Page 3 of 15          Initials: _____        Form 3005   1/01
                                                                                         CitiMortgage 3 2 8 13 V8

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

002004305287
VMP -6A(CA) (0207) 01

Page 4 of 15

Initials

Form 3005   1/01
CitiMortgage 3 2 8 13 V8

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

002004305287
VMP -6A(CA) (0207) 01                    Page 6 of 15                    Initials ___        Form 3005   1/01
                                                                                              CitiMortgage 3 2 8 13 V8

07 1085051

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

002004305287

VMP®-6A(CA) (0207) 01

Page 7 of 15

Initials _____

Form 3005   1/01

CitiMortgage 3.2 8 13 V8

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

002004305287
-6A(CA) (0207) 01                    Page 8 of 15           Initials

Form 3005   1/01
CitiMortgage 3.2.8 13 V8

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

002004305287
.-6A(CA) (0207) 01                    Page 10 of 15        Initials          Form 3005   1/01
                                                                              CitiMortgage 3.2.8 13 Y8

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

002004305287

VMP®-6A(CA) (0207).01   Page 11 of 15   Initials   Form 3005   1/01

CitiMortgage 3 2 8 l3 V8

07 105051

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

002004305287
-6A(CA) (0207) 01                    Page 12 of 15       Initials                        Form 3005   1/01
                                                                                        CitiMortgage 3.2.8.13 V8

07 108505 1

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
Belinda De Guzman                                          -Borrower
(Sign Original Only)

002004305287
-6A(CA) (0207) 01                    Page 14 of 15                    Form 3005   1/01
                                                                      CitiMortgage 3 2 8 l3 V8

07 10805051

16

State of California
County of   Los Angeles                                   } ss.

On  May 1st, 2007          before me,  Cynthia Garcia, Notary Public
                                                           personally appeared

Belinda De Guzman

                                                      , personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

                                                      _____ (Seal)

CYNTHIA GARCIA
Commission # 1679309
Notary Public - California
Los Angeles County
My Comm. Expires Jul 29, 2010

002004305287
-6A(CA) (0207) 01                     Page 15 of 15        Initials          Form 3005   1/01
                                                                             CitiMortgage 3.2 8 13 V8

07 1505051

# ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **1st** day of **May, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CitiMortgage, Inc.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**11547 VIMY ROAD, GRANADA HLS, CA 91344-2138**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows.

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **5.875 %**. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of June, 2010, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

002004305287

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae UNIFORM INSTRUMENT
Form 3189 6/01
Wolters Kluwer Financial Services
VMP®-166R (0401).01
Page 1 of 4          Initials: 

CitiMortgage 3 2 8 13 V8

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in <u>The Wall Street Journal</u>. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Two & 25/100                                                              percentage points
(              2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
        7.875 % or less than          3.875%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months My interest rate will never be greater than          11.875%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

002004305287

VMP®-166R (0401).01          Page 2 of 4

Initials: _____

Form 3189 6/01
CitiMortgage 3.2.8.13 V8

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

002004305287

VMP®-166R (0401).01

Page 3 of 4

Initials: _____

Form 3189 6/01
CitiMortgage 3.2.8.13 V8

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained
in this Adjustable Rate Rider.

_____ (Seal)
Belinda De Guzman                        -Borrower

(Sign Original Only)

002004305287

VMP®-166R (0401).01          Page 4 of 4          Form 3189 6/01
                                                  CitiMortgage 3 2 8 13 V8

Loan #:  002004305287

# ADJUSTABLE RATE ASSUMPTION RIDER

THIS ASSUMPTION RIDER is made this __1st__ day of __May__ , __2007__ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned person whether one or more, (the "Borrower") to secure Borrower's Note to CitiMortgage, Inc., 1000 Technology Drive, O' Fallon, MO  63368-2240 (the "Lender") of the same date and covering the property described in the Security Instrument and located at: 11547 VIMY ROAD, GRANADA HLS, CA 91344-2138

### (PROPERTY ADDRESS)

ASSUMPTION COVENANTS.  In addition to the convenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  **ASSUMPTION.**  Any person purchasing the Property from Borrower may assume full liability to repay Borrower's Note to Lender under the terms and conditions set out in this Assumption Rider.

B.  **AGREEMENT.**  Lender may require the Purchaser to sign an assumption agreement, in the form required by Lender, which obligates the Purchaser to keep all the promises and agreements made in the Note and Security Instrument.  Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.

C.  **APPLICABILITY.**  Lender is bound by these conditions and terms, as follows:
1.  This Assumption Rider applies only to the first transfer of the Property by Borrower and not to a foreclosure sale;
2.  Purchaser must be an individual, not a partnership, corporation or other entity;
3.  Purchaser must meet Lender's credit underwriting standards for the type of loan being assumed as if Lender were making a new loan to Purchaser;
4.  Purchaser shall assume only the balance due on the Note at the time of assumption for the term remaining on the Note;
5.  If applicable, Borrower's private mortgage insurance coverage must be transferred to the Purchaser in writing, unless waived by Lender;
6.  If Borrower's Note has a conversion feature and Borrower has exercised the right of conversion of this loan to a fixed rate loan from Lender, this Assumption Rider is void and Lender has no obligation to allow assumption by a Purchaser from Borrower; and
7.  Lender must reasonably determine that Lender's security will not be impaired by the loan assumption.

MB-1908  Rev  3/99    Page 1 of 2                                                    CitiMortgage 3 2 8 13 V8

Loan #:  002004305287

D.  ASSUMPTION RATE.   Lender will allow assumption by Purchaser at Borrower's Note interest rate in effect at the time of assumption.

E.  ADDITIONAL CHARGES.   In addition, Lender may charge an amount up to one percent (1%) of the current Note balance and its normal loan closing costs, except the cost of a real estate appraisal.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants of this Assumption Rider.

                                                        _____ (Seal)
Belinda  De Guzman                                                       -Borrower

MB-1908  Rev  3/99    Page 2 of 2                          CitiMortgage 3·2.8.13 V8

ORDER NO. PR0780679

Schedule "A"

LOT 66 OF TRACT NO. 8615, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 147 PAGES 17 TO 19 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM AN UNDIVIDED ONE-HALF OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERALS LYING IN AND UNDER SAID LAND OR PRODUCED AND SAVED THEREFROM BUT WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND AND THE SUBSURFACE AREA THEREOF TO A DEPTH OF 500 FEET, MEASURED FROM SAID SURFACE, AS RESERVED IN THE DEED FROM GEORGE A. CORDINGLY, ET AL., RECORDED JANUARY 6, 1956 IN BOOK 40975 PAGE 279, OFFICIAL RECORDS.

ALSO EXCEPT THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERALS LYING IN AND UNDER SAID LAND, TOGETHER WITH THE SOLE AND EXCLUSIVE EASEMENT AND RIGHTS OF WAY THROUGH THAT PART OF THE SUBSURFACE OF SAID LAND WHICH IS 500 FEET BELOW THE SURFACE THEREOF, FOR THE PURPOSE OF PRODUCING, TAKING, TREATING, STORING, REMOVING AND DISPOSING SAID SUBSTANCES FROM SAID LAND, WITH THE RIGHT FOR SUCH PURPOSES TO THE FREE USE OF OIL, GAS AND WATER FROM SAID LAND AND THE RIGHT TO INJECT IN SAID LAND, GAS, WATER AND OTHER FLUIDS FOR THE PURPOSE OR PRESSURE MAINTENANCE OR SECONDARY RECOVERY OF OIL, GAS AND OTHER HYDROCARBON SUBSTANCES FROM SAID LAND AND THE RIGHT TO CONDUCT SECONDARY RECOVERY OPERATION, TOGETHER WITH ANY AND ALL RIGHTS NECESSARY OR CONVENIENT FOR ANY AND ALL SAID PURPOSES INCLUDING BUT NOT LIMITED TO RIGHTS OF WAY EASEMENTS IN, UNDER AND THROUGH SAID LAND FOR THE PURPOSE OF TAKING SAID SUBSTANCES FROM LAND IN THE VICINITY THEREOF, AS GRANTED IN THE DEED FROM PANORAMA T.R. CO., A CORPORATION TO PANORAMA OIL CORP., A CORPORATION RECORDED OCTOBER 24, 1956 IN BOOK 52671 PAGE 365, OFFICIAL RECORDS.

07 1085051

# Exhibit A-2. ASSIGNMENT OF DEED OF TRUST

"COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

This page is part of your document - DO NOT DISCARD

# 20101032423





Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**07/28/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201007280160003

00002722143


002803042

SEQ:
01

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED                    t19

Requested and Prepared by:
CR Title Services, Inc.

## Stewart Title

07/28/2010

*20101032423*

When Recorded Mail To:
**CR Title Services, Inc.**
**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**

APN: 2601-037-041

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: **T10-64970-CA**                    Order No: **7742-317220**

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

CITIMORTGAGE INC.

all beneficial interest under that certain Deed of Trust dated: **05-01-2007** executed by
**BELINDA DE GUZMAN, A MARRIED WOMAN AS HER SOLE AND
SEPARATE PROPERTY** , as Trustor(s), to **VERDUGO TRUSTEE SERVICE
CORPORATION**, as Trustee, recorded **05-04-2007**, as Instrument No. **20071085051,**
in Book , Page , , of Official Records, in the office of the County Recorder of **LOS
ANGELES** County, **CALIFORNIA** together with the Promissory Note secured by said
Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Date: July 26, 2010

3

TS: T10-64970-CA

"MERS" IS MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.

Lisa Markham
Assistant Secretary

State of AZ }ss
County of  PIMA}ss

On July 26, 2010 before me, Stephanie G. Abcede Notary Public, personally appeared Lisa Markham, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  .

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

Signature_____(seal)
          Stephanie G. Abcede Notary Public

OFFICIAL SEAL
STEPHANIE G. ABCEDE
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. April 6  2014

# Exhibit A-3. NOTICE OF DEFAULT

*COPYRIGHT 2011* , COPYRIGHT 2011
-All Rights Reserved-

This page is part of your document - **DO NOT DISCARD**



# 20101032425



Pages: 0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/28/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201007280160003

00002722145



002803042

**SEQ:**
**03**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:

**Stewart Title**
WHEN RECORDED MAIL TO:
CR TITLE SERVICES INC.
1000 TECHNOLOGY DRIVE MS 314
O'FALLON, MO 63368
3|7220



SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: T10-64970-CA/ APN: 2601-037-041

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$87,682.92** as of **07-24-2010**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

CITIMORTGAGE INC.
C/O CitiMortgage Inc.
ATTN: FORECLOSURE DEPARTMENT

TS No.: T10-64970-CA

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**
**Phone: 877-576-0472**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That **CR Title Services, Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **05-01-2007**, executed by **BELINDA DE GUZMAN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor, to secure certain obligations in favor of **"MERS" IS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, as beneficiary, recorded **05-04-2007**, as Instrument No. 20071085051, in Book , Page , , of Official Records in the Office of the Recorder of **LOS ANGELES** County, California describing land therein as. AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

including **1 NOTE(S) FOR THE ORIGINAL** sum of **$768,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**INSTALLMENT OF PRINCIPAL AND INTEREST PLUS IMPOUNDS AND / OR ADVANCES WHICH BECAME DUE ON 11/01/2008 PLUS LATE CHARGES, AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST, BALLOON PAYMENTS, PLUS IMPOUNDS AND/OR ADVANCES AND LATE CHARGES THAT BECOME PAYABLE.**

. That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Dated: 07-26-2010**

CR Title Services, Inc., AS AGENT FOR THE
BENEFICIARY by STEWART TITLE OF CA, AS
AUTHORIZED AGENT

BY: _____
     STEVE DUNSMORE

Federal Law requires us to notify you that we are acting as a debt collector. If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

710 - 64970 - CA
L/

Declaration Re: Borrower Contact and Due Diligence Pursuant to CC §2923.5 and instructions to Trustee
Re: Notice of Default

Re:  **BELINDA DE GUZMAN**
     **11547 VIMY ROAD**
     **GRANADA HILLS, CA 91344**
     **CitiMortgage**
     **2004305287**

The undersigned beneficiary or their authorized agent for the beneficiary hereby represents and declares as follows:

1. x On 7/30/2009 the beneficiary or their authorized agent contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure. During this contact the borrower(s) was advised he or she has the right to schedule a follow-up meeting to occur within 14 days. Further, the borrower(s) was provided the toll-free telephone number to find a HUD-certified housing counseling agency.

2. n/a n/a No contact was made with the borrower despite the due diligence of beneficiary or their authorized agent's pursuant to California Civil Code §2923.5(g), including (a) Mailing a first-class letter to the borrower(s) which included a toll free number to contact a HUD-certified housing counseling agency; (b) Attempting to contact the borrower(s) by telephone at the primary telephone number on file at least three times at different hours and on different days or determined that the primary and secondary phone numbers on file were disconnected; and (c) Having received no response from the borrower(s) for 14 days after the telephone contact efforts were complete, an additional letter was sent to the borrower(s) via certified mail, with return receipt requested.

3. n/a The borrower has surrendered the secured property as evidenced by a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, their authorized agent or the trustee.

4. n/a The Beneficiary or their authorized agent has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

5. n/a The beneficiary or their authorized agent has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

6. n/a The provisions of California Civil Code §2923.5 do not apply because the loan is not a residential mortgage loans originated between January 1, 2003 and December 31, 2007 secured by the borrower's principal residence.

The undersigned instructs the trustee to proceed with non-judicial foreclosure proceedings and expressly authorizes the trustee or their authorized agent to sign the notice of default containing the declaration re: contact required pursuant to California Civil Code §2923.5.

Dated. 07/20/2010

By·  Pam January

# Exhibit A-4. NOTICE OF TRUSTEE SALE

*COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

RECORDER MEMO: This COPY NOT an OFFICIAL RECORD.

This page is part of your document - DO NOT DISCARD



**20101553504**



Pages: 0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/29/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**



201010290120005

00003201811



002966669

**SEQ:
20**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t19

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY ( )OT an OFFICIAL RECORD.
Stewart Title

RECORDING REQUESTED BY
CR TITLE SERVICES INC.

10/29/2010
*20101553504*

AND WHEN RECORDED MAIL TO:
CR TITLE SERVICES INC.
P.O. BOX 16128
TUCSON, AZ 85732-6128

317220

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No. T10-64970-CA / APN: 2601-037-041

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 05-01-2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Pursuant to California Civil Code Section 2923.54 the undersigned, on behalf of the beneficiary, loan servicer, or authorized agent, declares as follows:

[ X ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed and
[ X ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55

Trustor: **BELINDA DE GUZMAN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Duly Appointed Trustee: CR Title Services, Inc.
         **P.O. BOX 16128, TUCSON, AZ 85732-6128 866-702-9658**
Recorded 05-04-2007 as Instrument No. 20071085051 in book , page   of Official Records in the office of the Recorder of LOS ANGELES County, California,
Date of Sale:11-19-2010 at 10:30 AM
Place of Sale:     **AT THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE,DIRECTLY FACING NORWALK BLVD., 12720 NORWALK BLVD., NORWALK, CA.**
Amount of unpaid balance and other charges: $856,707.27
Street Address or other common designation of real property:     **11547 VIMY ROAD
                                                                  GRANADA HLS, CA 91344-2138**

A.P.N.: 2601-037-041
Legal Description: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale. The Trustee shall incur no liability for any good faith error in stating the proper amount of unpaid balances and charges.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY )IOT an OFFICIAL RECORD.

*3*

For Sales Information please contact AGENCY SALES AND POSTING at WWW.FIDELITYASAP.COM or 714-730-2727

REINSTATEMENT LINE: 866-702-9658

Date: 10-29-2010

CR Title Services, Inc.
P.O. BOX 16128
TUCSON, AZ 85732-6128

STEPHANIE ABCEDE, TRUSTEE SPECIALIST

Federal Law requires us to notify you that we are acting as a debt collector. If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# Exhibit A-5. ASSIGNMENT OF DEED OF TRUST

"COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

This page is part of your document - DO NOT DISCARD

## 20101877633



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/20/10 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**



201012200220003

00003464464



003052254

**SEQ:**
**22**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

Requested and Prepared by:
CR Title Services, Inc.

**Stewart Title**

When Recorded Mail To:
**Saxon Mortgage**
**ATTN: REO DEPARTMENT**
**4708 MERCANTILE DRIVE NORTH**
**C/O CASH DEPT.-MSP**
**FORT WORTH, TX 76137**

APN: 2601-037-041

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: T10-64970-CA                    Order No: 7742-317220

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

FV-1, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LL

all beneficial interest under that certain Deed of Trust dated: **05-01-2007** executed by
**BELINDA DE GUZMAN, A MARRIED WOMAN AS HER SOLE AND
SEPARATE PROPERTY**, as Trustor(s), to **VERDUGO TRUSTEE SERVICE
CORPORATION**, as Trustee, recorded **05-04-2007**, as Instrument No. **20071085051**,
in Book , Page , , of Official Records, in the office of the County Recorder of **LOS
ANGELES** County, **CALIFORNIA** together with the Promissory Note secured by said
Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Date: December 16, 2010

22 ℓ

*3*

**TS:** T10-64970-CA

CITIMORTGAGE, INC.

Lisa Markham
Assistant Vice President

State of AZ }ss
County of PIMA }ss

On December 16, 2010 before me, Xochitl Pizarro, Notary Public,
personally appeared Lisa Markham, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(seal)
        Xochitl Pizarro, Notary Public

XOCHITL PIZARRO
Notary Public - Arizona
PIMA COUNTY
My Commission Expires
4-8-2014

# Exhibit A-6. TRUSTEE DEED UPON SALE

"COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

This page is part of your document - DO NOT DISCARD

## 20101877634





**Pages:**
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/20/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201012200220003

00003464455


003052254

SEQ:
23

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

t19

RECORDING REQUESTED BY
CR Title Services, Inc.
Mail Tax Statements to
AND WHEN RECORDED TO.
Saxon Mortgage Services Inc.
ATTN: REO DEPARTMENT
4708 MERCANTILE DRIVE NORTH
C/O CASH DEPT.-MSP
FORT WORTH TX 76137
Forward Tax Statements to
the address given above



12/20/2010

*20101877634*

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: T10-64970-CA
APN. 2601-037-041

Order #. 7742-317220
Investor #·

## TRUSTEE'S DEED UPON SALE

A P N.. 2601-037-041                                  Transfer Tax  $0.00

The Grantee Herein was The Foreclosing Beneficiary
The Amount of The Unpaid Debt was $876,544.73
The Amount Paid By the Grantee Was $625,000.00
Said Property Is In the City of GRANADA HLS, County of LOS ANGELES

CR Title Services, Inc., as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

## FV-1, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LL

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of LOS ANGELES, State of California, described as follows·

See Attached Legal Description

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by BELINDA DE GUZMAN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, dated 05-01-2007 and recorded on 05-04-2007, instrument number 20071085051, Book , Page of the Official Records in the office of the Recorder of LOS ANGELES, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

3

# TRUSTEE'S DEED UPON SALE

TS #: T10-64970-CA
Order #: 7742-317220

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 12-01-2010, Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $625,000.00, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust

In witness thereof, CR Title Services, Inc., as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date  December 16, 2010

CR Title Services, Inc.

BY:

Lisa Markham, Assistant Vice President

State of AZ        |ss
County of PIMA |

On December 16, 2010 before me, Xochitl Pizarro, Notary Public, personally appeared Lisa Markham, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (seal)
Xochitl Pizarro, Notary Public

XOCHITL PIZARRO
Notary Public - Arizona
PIMA COUNTY
My Commission Expires
4-4-2014

4

TS #: T10-64970-CA
Order #. 7742-317220

Legal Description

LOT 66 OF TRACT NO. 8615, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 147 PAGES 17 TO 19 INCLUSIVE OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
EXCEPT THEREFROM AN UNDIVIDED ONE-HALF OF ALL OIL, GAS AND OTHER
HYDROCARBON SUBSTANCES AND MINERALS LYING IN AND UNDER SAID LAND OR
PRODUCED AND SAVED THEREFROM BUT WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON
THE SURFACE OF SAID LAND AND THE SUBSURFACE AREA THEREOF TO A DEPTH OF 500
FEET, MEASURED FROM SAID SURFACE, AS RESERVED IN THE DEED FROM GEORGE A.
CORDINGLY, ET AL., RECORDED JANUARY 6, 1956 IN BOOK 40975 PAGE 279, OFFICIAL
RECORDS.
ALSO EXCEPT THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND
MINERALS LYING IN AND UNDER SAID LAND, TOGETHER WITH THE SOLE AND EXCLUSIVE
EASEMENT AND RIGHTS OF WAY THROUGH THAT PART OF THE SUBSURFACE OF SAID LAND
WHICH IS 500 FEET BELOW THE SURFACE THEREOF, FOR THE PURPOSE OF PRODUCING,
TAKING, TREATING, STORING, REMOVING AND DISPOSING SAID SUBSTANCES FROM SAID
LAND, WITH THE RIGHT FOR SUCH PURPOSES TO THE FREE USE OF OIL, GAS AND WATER
FROM SAID LAND AND THE RIGHT TO INJECT IN SAID LAND, GAS, WATER AND OTHER FLUIDS
FOR THE PURPOSE OR PRESSURE MAINTENANCE OR SECONDARY RECOVERY OF OIL, GAS
AND OTHER HYDROCARBON SUBSTANCES FROM SAID LAND AND THE RIGHT TO CONDUCT
SECONDARY RECOVERY OPERATION, TOGETHER WITH ANY AND ALL RIGHTS NECESSARY
OR CONVENIENT FOR ANY AND ALL SAID PURPOSES INCLUDING BUT NOT LIMITED TO
RIGHTS OF WAY EASEMENTS IN, UNDER AND THROUGH SAID LAND FOR THE PURPOSE OF
TAKING SAID SUBSTANCES FROM LAND IN THE VICINITY THEREOF, AS GRANTED IN THE
DEED FROM PANORAMA T.R. CO., A CORPORATION TO PANORAMA OIL CORP., A
CORPORATION RECORDED OCTOBER 24, 1956 IN BOOK 52671 PAGE 365, OFFICIAL RECORDS.

# Exhibit A-7. CORRECTION
# OF DEED

*COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**This page is part of your document - DO NOT DISCARD**



## 20110157751



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/28/11 AT 08:00AM

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**



201101280220006

00003677810

003130214

SEQ:
01

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t19

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**Stewart Title**

RECORDING REQUESTED BY:
CR Title Services, Inc.
   Mail Tax Statements to
AND WHEN RECORDED TO:
Saxon Mortgage Services Inc.
ATTN: REO DEPARTMENT
4708 MERCANTILE DRIVE NORTH
C/O CASH DEPT.-MSP
FORT WORTHTX76137
Forward Tax Statements to
the address given above



01/28/2011
*20110157751*

SPACE ABOVE LINE FOR RECORDERS USE

TS #: T10-64970-CA
APN: 2601-037-041

Order #: 7742-317220
Investor #:

## TRUSTEE'S DEED UPON SALE

This document is being recorded to correct the original Trustee's Deed Upon sale recorded on 12-20-2010 as document no.:10 1877634, in the office of the LOS ANGELES County Recorder, records of LOS ANGELES County, CA. to correct the Beneficiary from FV-1, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LL to FV-1, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC

A.P.N.: 2601-037-041                          Transfer Tax: $0.00

The Grantee Herein was The Foreclosing Beneficiary.
The Amount of The Unpaid Debt was $876,544.73
The Amount Paid By the Grantee Was $625,000.00
Said Property Is In the City of GRANADA HLS, County of LOS ANGELES

CR Title Services, Inc., as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

**FV-1, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of LOS ANGELES, State of California, described as follows:

See Attached Legal Description

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by BELINDA DE GUZMAN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, dated 05-01-2007 and recorded on 05-04-2007, instrument number 20071085051, Book , Page of the Official Records in the office of the Recorder of LOS ANGELES, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

3

## TRUSTEE'S DEED UPON SALE

TS #: T10-64970-CA
Order #: 7742-317220

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 12-01-2010. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$625,000.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, CR Title Services, Inc., as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **January 26, 2011**

CR Title Services, Inc.

BY: _____
Lisa Markham, Assistant Vice President

State of AZ        }ss
County of PIMA}

On January 26, 2011 before me, Xochitl Pizarro, Notary Public, personally appeared Lisa Markham, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (seal)
Xochitl Pizarro, Notary Public

XOCHITL PIZARRO
Notary Public - Arizona
PIMA COUNTY
My Commission Expires
4-8-2014

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

TS #: T10-64970-CA
Order #: 7742-317220

4

Legal Description

LOT 66 OF TRACT NO. 8615, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 147 PAGES 17 TO 19 INCLUSIVE OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
EXCEPT THEREFROM AN UNDIVIDED ONE-HALF OF ALL OIL, GAS AND OTHER
HYDROCARBON SUBSTANCES AND MINERALS LYING IN AND UNDER SAID LAND OR
PRODUCED AND SAVED THEREFROM BUT WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON
THE SURFACE OF SAID LAND AND THE SUBSURFACE AREA THEREOF TO A DEPTH OF 500
FEET, MEASURED FROM SAID SURFACE, AS RESERVED IN THE DEED FROM GEORGE A.
CORDINGLY, ET AL., RECORDED JANUARY 6, 1956 IN BOOK 40975 PAGE 279, OFFICIAL
RECORDS.
ALSO EXCEPT THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND
MINERALS LYING IN AND UNDER SAID LAND, TOGETHER WITH THE SOLE AND EXCLUSIVE
EASEMENT AND RIGHTS OF WAY THROUGH THAT PART OF THE SUBSURFACE OF SAID LAND
WHICH IS 500 FEET BELOW THE SURFACE THEREOF, FOR THE PURPOSE OF PRODUCING,
TAKING, TREATING, STORING, REMOVING AND DISPOSING SAID SUBSTANCES FROM SAID
LAND, WITH THE RIGHT FOR SUCH PURPOSES TO THE FREE USE OF OIL, GAS AND WATER
FROM SAID LAND AND THE RIGHT TO INJECT IN SAID LAND, GAS, WATER AND OTHER FLUIDS
FOR THE PURPOSE OR PRESSURE MAINTENANCE OR SECONDARY RECOVERY OF OIL, GAS
AND OTHER HYDROCARBON SUBSTANCES FROM SAID LAND AND THE RIGHT TO CONDUCT
SECONDARY RECOVERY OPERATION, TOGETHER WITH ANY AND ALL RIGHTS NECESSARY
OR CONVENIENT FOR ANY AND ALL SAID PURPOSES INCLUDING BUT NOT LIMITED TO
RIGHTS OF WAY EASEMENTS IN, UNDER AND THROUGH SAID LAND FOR THE PURPOSE OF
TAKING SAID SUBSTANCES FROM LAND IN THE VICINITY THEREOF, AS GRANTED IN THE
DEED FROM PANORAMA T.R. CO., A CORPORATION TO PANORAMA OIL CORP., A
CORPORATION RECORDED OCTOBER 24, 1956 IN BOOK 52671 PAGE 365, OFFICIAL RECORDS.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# Exhibit A-8. ROBOSIGNER'S SAMPLE SIGNATURE LIFTER FROM THE RECORDED DOCUMENTS

*COPYRIGHT 2011   , COPYRIGHT 2011
-All Rights Reserved-

## ROBO-SIGNER LISA MARKHAM

CITIMORTGAGE, INC.

Lisa Markham
Assistant Vice President

CR Title Services, Inc.

BY:
Lisa Markham, Assistant Vice President

"MERS" IS MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.

Lisa Markham
Assistant Secretary

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV11- 8685 DSF (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

- - = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Please Conform **This Copy**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐ )<br>BELINDA DE GUZMAN, et al. | **DEFENDANTS**<br>CITIMORTGAGE, INC., et al. |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known)<br>Robert E. Feyder<br>Kevin S. Asfour<br>K&L Gates LLP<br>10100 Santa Monica Blvd., 7th Floor<br>Los Angeles, CA  90067<br>310.552.5000 |

**II.  BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.  CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.  REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes   ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No      ☒ **MONEY DEMANDED IN COMPLAINT: $** (not specified)

**VI.  CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. §§ 1961 et seq.); Truth in Lending Act ("TILA," 15 U.S.C. §§ 1601 et seq.); Real Estate Settlement Procedures Act ("RESPA," 12 U.S.C. §§ 2601 et seq.)

**VII.  NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | |

CV11- 8685

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CCD-JS44

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a).   IDENTICAL CASES:  Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes

If yes, list case number(s):

VIII(b).   RELATED CASES:  Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[ ]   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York, Missouri |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date  October 19, 2011

Kevin S. Asfour, Esq.

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |